**IN THE COURT OF APPEALS OF IOWA**

No. 23-1814
Filed April 9, 2025

**CHARLES BUEL and KAREN BUEL,**
    Plaintiffs-Appellants,

**vs.**

**SHANE SCHULER and NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert (dismissal) and Scott D. Rosenberg (summary judgment), Judges.

Plaintiffs seeking damages for a car crash appeal the district court's dismissal of their claims against the driver for untimely service and its grant of summary judgment on their claims against their insurer. **AFFIRMED.**

Channing L. Dutton, Urbandale, for appellants.

Stefanie J. Thomas-Nichols of Law Offices of John M. Guthrie, Des Moines, for appellee Nationwide Agribusiness Insurance Company.

Jon A. Vasey and Spencer Vasey Dirth of Elverson Vasey, Des Moines, for appellee Shane Schuler.

Considered without oral argument by Ahlers, P.J., and Badding and Langholz, JJ.

**LANGHOLZ, Judge.**

After a speeding driver crashed into the rear of their vehicle, Charles and Karen Buel sued the driver, Shane Schuler, and their insurance company, Nationwide Agribusiness Insurance Company. But the Buels failed to serve Schuler within ninety days, so the district court dismissed their claims against him. And because the Buels were no longer "legally entitled to recover" against Schuler, the court granted summary judgment for Nationwide on their underinsured-motorist claim. The Buels now appeal both rulings.

Although the Buels served Schuler only thirteen days late, they must still show good cause for any violation of the ninety-day service requirement of our rules of civil procedure. And on our review, we agree that the Buels have not shown good cause for failing to serve Schuler by the ninety-day deadline. When resisting dismissal, the Buels offered only vague descriptions of efforts to serve Schuler, provided no concrete details about what investigative steps were taken or when, and could not explain significant gaps between attempts at service. Because courts may only depart from the ninety-day service requirement when good cause has been shown, the district court did not err in dismissing the claims against Schuler.

As for their claim against Nationwide, the Buels failed to preserve error. None of their arguments on appeal were made to or considered by the district court. So we cannot consider them for the first time on appeal. We thus affirm the dismissal of the Buels' suit.

## I.  Factual Background and Proceedings

In early March 2020, the Buels were driving down a highway when Schuler, driving at a high rate of speed, crashed into the rear of their vehicle.  The Buels were both injured in the collision.  On March 6, 2022, the Buels sued Schuler for negligence and their insurer, Nationwide, to recover under their underinsured-motorist policy.  The Buels thus had until June 6 to serve the defendants.  *See* Iowa R. Civ. P. 1.302(3), (5).  Nationwide was promptly served with the petition and original notice, but the Buels struggled to serve Schuler.

A deputy sheriff tried to serve Schuler on March 10 and then again on March 21, but neither effort was successful—Schuler did not live at that address. Another deputy tried a new address on May 2, but Schuler did not live there either. On May 20, the Buels moved to continue a trial scheduling conference set for the next week, noting the difficulties they were having locating Schuler.  The Buels alerted the court that if they could not locate him, then they anticipated moving for service by publication later on.  The district court promptly granted their motion and continued the conference.

On June 13, the court sua sponte issued an order alerting the Buels that the ninety-day service period had run and no return of service for Schuler had been filed.  The order required the Buels to either file a return of service showing Schuler had been timely served or "file a motion with supporting affidavit stating the good cause for [their] failure to timely serve" Schuler and "requesting the Court to direct an alternate manner of service, or to extend the time for an appropriate period of service, or filing of the return."  The order also warned that if the Buels did not comply within fourteen days, the case would be dismissed without prejudice.

The Buels did not comply with the order. Rather, a week later, they filed a return of service showing Schuler was served late—on June 17 at a new address. This was 103 days after the petition was filed and thirteen days after the deadline. The Buels also filed a "reply" to the court's order, providing a limited explanation for the delay—that they used "three different service processes and also utilized various skip tracing techniques[1] to locate and serve Schuler." The filing was not accompanied by an affidavit or motion to extend the deadline for service.

Schuler promptly moved to dismiss all claims against him for late—and thus insufficient—service. *See* Iowa Rs. Civ. P. 1.302(5), 1.421(1)(c). The Buels resisted, arguing that their service efforts went beyond relying on the sheriff's office and also included hiring a private investigator. They asserted that the investigator searched for "Schuler through public records search and other search techniques, including social media," and ultimately "suggested the third address" where Schuler was served. And they emphasized that they had previously alerted the court to the difficulties locating Schuler when they moved to continue the trial scheduling conference—at the time believing Schuler had "gone underground with no identifying information about him anywhere."

After an unreported hearing, the district court dismissed the claims against Schuler. The court found the Buels' explanation for the late service wanting—there was no affidavit from the investigator describing his efforts or showing when he notified the Buels of Schuler's correct address. Nor did it find "[v]ague references

---

[1] According to the parties' filings, "skip tracing" is a term for "tracking down people who are particularly hard to find" using resources like "property and address information, criminal background, legal and court history, [and] social media accounts."

to 'public records search and other search techniques, including social media'" sufficient to show good cause. What's more, the court reasoned that there were "two significant gaps in time when no activity was being undertaken"—they never tried to serve Schuler between March 22 and May 1, or between May 3 and June 16. The court thus found no good cause for the late service and dismissed the claims against Schuler without prejudice.

The Buels moved to reconsider and, for the first time, offered an affidavit of the investigator. That affidavit provided new facts about the investigator's actions, though it lacked concrete dates for when those actions were taken. Still, the affidavit revealed that the Iowa Department of Transportation was queried on May 17, and its report contained the address where Schuler was finally served— thirty-one days later. Beyond the new evidence, the Buels also argued for the first time that by continuing the trial scheduling conference, the court necessarily extended the service deadline beyond ninety days. And they urged that because the statute of limitations had already run, the dismissal was functionally with prejudice, which was too harsh a consequence for a thirteen-day delay in service.

Schuler resisted reconsideration, pointing out that the Buels were introducing new facts never brought before the court during the initial motion proceedings. And he argued that even considering the investigator's affidavit, it shows that the Buels were aware of Schuler's true address within the service window, but took no steps to serve him until after the deadline passed. The court summarily denied the motion to reconsider.

Eight months later, Nationwide moved for summary judgment on the Buels' claim for underinsured-motorist coverage. Nationwide argued that it was only

required to provide coverage when a policyholder is "*legally entitled to recover damages* from the owner or operator of an . . . underinsured motor vehicle." Iowa Code § 516A.1(1) (2022) (emphasis added).[2] Relying on an unpublished case from our court, Nationwide argued that because the Buels could not recover any damages against Schuler after he was dismissed as a party for untimely service, Nationwide owed no duty under the policy to provide underinsured-motorist coverage. *See Eikenberry v. Am. Fam. Mut. Ins.*, No. 22-0329, 2023 WL 152563, at *2–4 (Iowa Ct. App. Jan. 11, 2023) (dismissing underinsured-motorist claim against insurer because policyholder was "not legally entitled to recover damages" against a driver who was dismissed from the action for improper service). The Buels resisted summary judgment, arguing (1) they could still appeal Schuler's dismissal so any arguments arising out of his dismissal were premature, and (2) Nationwide has not been prejudiced by Schuler's dismissal because it is only liable for amounts exceeding Schuler's insurance coverage.

The district court granted summary judgment for Nationwide. In a concise ruling, the court stated it had "reviewed *Eikenberry*" and found "that the conclusions and rationale in that matter are controlling." And so it dismissed the claims against Nationwide. The Buels moved to enlarge the ruling, arguing the court did not address the interlocutory nature of Schuler's dismissal. The court denied the motion. And the Buels now appeal.

---

[2] The Buels' insurance policy contained materially similar language to the statute.

## II.    Failure to Serve Schuler Within Ninety Days

The Buels first argue the district court erred by dismissing Schuler for lack of service.[3]  A plaintiff must serve the original notice and a copy of the petition on all defendants to a civil action within ninety days of filing suit.  Iowa R. Civ. P. 1.302(3), (5).  Unless a plaintiff shows good cause, failure to meet that service deadline results in dismissal without prejudice.  *See* Iowa R. Civ. P. 1.302(5).  We review such dismissals for untimely service for legal error, accepting the district court's findings of fact when supported by substantial evidence.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

We begin by clearing some brush.  Much of the Buels' good-cause argument on appeal relies on evidence never provided to the district court when it ruled on Schuler's motion to dismiss.  But litigants may not "use a rule 1.904(2) motion to introduce new evidence."  *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 525 (Iowa 2015).  So we will not consider the new facts injected by the Buels' motion to reconsider.  Nor will we consider new legal arguments raised for the first time within that motion.  *See Winger Contracting Co. v. Cargill, Inc.*, 926 N.W.2d 526, 543 (Iowa 2019).  So we also do not consider the Buels' argument that continuing the trial scheduling conference implicitly extended the ninety-day service period.  Instead, we only review whether the district court erred by finding the Buels failed to show good cause for serving Schuler thirteen days late.

---

[3] The Buels may appeal the initial order dismissing Schuler because they timely appealed from the summary-judgment ruling dismissing claims against the last remaining defendant, Nationwide.  *See* Iowa R. App. P. 6.101(1)(d); *Valles v. Mueting*, 956 N.W.2d 479, 483 (Iowa 2021).

Service outside the ninety-day window is presumptively abusive and shifts the burden to the plaintiff to show good cause for the delay. *Meier*, 641 N.W.2d at 542. Good cause requires taking "some affirmative action to effectuate service of process upon the defendant." *Id.* (cleaned up). A plaintiff's "[i]nadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service" do not meet the standard. *Id.* (cleaned up). Rather, good cause is most often found when "failure to complete service in timely fashion is a result of the conduct of a third person," a defendant evades service, or the plaintiff otherwise "acted diligently in trying to effect service." *Rucker v. Taylor*, 828 N.W.2d 595, 600 (Iowa 2013) (cleaned up). The standard "considers all the surrounding circumstances, including circumstances that would make it inequitable for a defendant to successfully move to dismiss." *Id.* at 601.

When resisting Schuler's motion to dismiss for failure to serve, the Buels offered the following efforts during the ninety-day window: (1) they used the Polk County Sheriff's Office to try to serve Schuler at two addresses; (2) they hired a private investigator who performed a "public records search" and used "other search techniques, including social media"; and (3) when moving to continue the trial scheduling conference, they informed the court they were using "various skip tracing techniques to locate and serve Schuler" and believed that he had "gone underground with no identifying information about him anywhere."[4]

---

[4] While outside the proper motion-to-dismiss record, we note the investigator's affidavit confirms that when the Buels represented that there was no information about Schuler "anywhere," the Iowa Department of Transportation had already been queried and that report contained Schuler's correct address.

We agree with the district court that these explanations alone do not rise to the level of good cause. First, there are significant and unexplained gaps between attempts at service. After trying on March 10 and March 21, no attempts were made for the next six weeks. *See Meier*, 641 N.W.2d at 543 (noting, among other factors, a roughly six-week gap in efforts to serve the defendant when finding plaintiff failed to show good cause). And then no attempts were made between May 3 and June 16. Although the Buels appear to have hired an investigator during this time, they offered only a vague description of the investigator's work. So we do not know what steps were taken to find Schuler, or whether those steps were taken with due haste. *See Crall v. Davis*, 714 N.W.2d 616, 621 (Iowa 2006) (finding no good cause even when plaintiffs learned of correct address only about two weeks before deadline, sent papers to process server ten days before deadline, and server did not start attempting service there until four days before deadline only to discover defendant was away from home). And second, bare allegations of using various "search techniques" are not enough to prove diligence. Without more information, we cannot separate the Buels' efforts from other "half-baked attempts at service." *Rucker*, 828 N.W.2d at 601 (cleaned up).

We acknowledge the Buels' argument that dismissal is a harsh outcome for a thirteen-day delay in service. Because the statute of limitations has run, the without-prejudice dismissal in effect bars any relief from Schuler. *See id.* at 603 (cautioning courts to avoid applying the good-cause standard "too narrowly" because "the substantive rights of a plaintiff can be at stake through the application of a statute of limitations"). Even so, we are not free to disregard the deadlines and standards set by our rules of civil procedure. *See Esterdahl v. Wilson*,

110 N.W.2d 241, 246 (Iowa 1961). Our ninety-day rule avoids unjust dismissals by employing the good-cause standard. But if a plaintiff cannot show good cause, then dismissal is required, no matter how many days outside the rule the defendant was served. Because the Buels did not meet their burden to show good cause for serving Schuler outside the timeframe allowed by rule, the district court correctly dismissed all claims against him.

### III. Nationwide's Liability After Schuler Is Dismissed

The Buels next argue the district court erred by granting summary judgment for Nationwide. But we cannot consider their arguments because the Buels failed to preserve error. *See Meier*, 641 N.W.2d at 537 ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

When Nationwide moved for summary judgment, it argued that the Buels' underinsured-motorist claim failed under the terms of their policy and Iowa Code section 516A.1(1) because they were not "legally entitled to recover" against Schuler after his dismissal from the suit. Nationwide relied on our court's unpublished opinion in *Eikenberry*, which came to the same conclusion under nearly identical facts. *See Eikenberry*, 2023 WL 152563, at *2–4. The Buels resisted summary judgment by arguing that the Schuler's dismissal was not yet final since they had a right to appeal and that Nationwide was not prejudiced by that dismissal. But they do not make these arguments on appeal. Rather, they now argue that *Eikenberry* was wrongly decided and that under a proper interpretation of section 516A.1(1) and their policy's terms, they were "legally entitled to recover" even though Schuler was dismissed for untimely service.

These arguments were never made to the district court. "Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court." *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). This error preservation requirement gives the district court an opportunity to address the error itself "at a time when corrective action can be taken," thus conserving judicial and party resources. *In re Marriage of Heiar*, 954 N.W.2d 464, 470 (Iowa Ct. App. 2020) (cleaned up); *see also DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002) ("[I]t is unfair to allow a party to choose to remain silent in the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable." (cleaned up)). And it ensures that we are acting as a court of *appeals*, reviewing a decision already made by the district court after adversarial testing, rather than considering it for the first time on appeal. *See Meier*, 641 N.W.2d at 537. Because the Buels make no preserved arguments for our review, we affirm the district court's grant of summary judgment for Nationwide.

**AFFIRMED.**